**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY K. SCHLICK,
Plaintiff-Appellant,

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,

No. 95-2695

Defendant-Appellee,

and

WILLIAM RAUB, Dr., Acting Director
of the National Institutes of Health,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-91-231-PJM)

Argued: July 8, 1996

Decided: August 1, 1996

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and JOSEPH F. ANDERSON, JR., United States District Judge for
the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David H. Shapiro, SWICK & SHAPIRO, P.C., Washing-
ton, D.C., for Appellant. Larry David Adams, Assistant United States

Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Diane Bodner, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Mary K. Schlick brought suit alleging that the Department of Health and Human Services failed to make reasonable accommodation for her disability and constructively discharged her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 790 et seq. On appeal, she argues that the district court erred in entering summary judgment against her. We hold, however, that appellant was not a qualified individual entitled to reasonable accommodation under the Act and was not constructively discharged. Accordingly, we affirm the judgment of the district court.

I.

In 1974, Schlick suffered a head injury and was diagnosed as having Non-psychotic Organic Brain Syndrome with Brain Trauma. Her condition substantially limits her ability to work, in particular her ability to handle complex work assignments, deadlines, and work requiring frequent synthesis of new material.

Schlick was hired by the National Cancer Institute (NCI) in 1979. She was rapidly promoted, obtaining in 1984 a GS-11 position as a legislative analyst. Dr. Mary Knipmeyer became her supervisor in 1983 and gave her favorable performance reviews prior to 1987. In April 1986, Schlick went on a six-month work detail to the National

2

Institute of Diabetes and Digestive and Kidney Diseases (NIDDK). She also received a favorable review for her performance there.

In 1987, however, Schlick's performance declined dramatically. In the beginning of 1987, Schlick went on a second detail to the Community Clinical Oncology Program (CCOP). In evaluating her work at CCOP, her supervisor there expressed strong disappointment in her performance, stating that "[Schlick] is not considered responsible for carrying out critical tasks," and "requires almost a one-to-one supervision. This should not be necessary at her grade level."

Following her return from CCOP, Schlick's July 1987 progress review documented further problems with her performance. In August 1987, Dr. Knipmeyer asked Schlick to prepare a legislative history of the Cancer Center Program. Substantial defects in her work product forced Dr. Knipmeyer to spend numerous hours revising and correcting the report. In November 1987, Dr. Knipmeyer provided Schlick with a letter outlining the problems with the legislative history project and requested that Schlick obtain a medical evaluation in order to allow NCI to assess what positions or accommodations might be appropriate for her. In December 1987, Schlick went on leave and never returned to work.

Schlick brought suit in 1990, alleging that the Department of Health and Human Services had failed to accommodate her disability and constructively discharged her in violation of the Rehabilitation Act of 1973. The district court awarded summary judgment to appellee.

II.

On appeal, Schlick contends that the district court erred in granting summary judgment, arguing that she was a qualified employee entitled to accommodation and was constructively discharged in violation of the Rehabilitation Act. We disagree. No reasonable interpretation of the record will support the conclusion either that she was qualified for her position or that she was constructively discharged.

A.

Under applicable regulations, the Rehabilitation Act requires federal agencies to "make reasonable accommodation to the known phys-

3

ical or mental limitations of an applicant or employee who is a qualified individual with handicaps . . . ." 29 C.F.R. § 1614.203(c)(1). Among other requirements, a "qualified individual with handicaps" must be able "with or without reasonable accommodation, [to] perform the essential functions of the position in question." 29 C.F.R. § 1614.203(a)(6). Schlick asserts that her favorable performance reviews prior to 1987 demonstrate that she was a"qualified individual." We disagree. While these evaluations may suggest that Schlick was capable of performing certain elements of her job, her performance in 1987 and medical evidence regarding her condition demonstrate that she could not fully meet the legitimate requirements of her position.

A primary example is Schlick's performance on the legislative history assignment for Dr. Knipmeyer. There is no question that the project fell within Schlick's job description, but her work product was plainly inadequate, both incomplete and riddled with errors. For example, Schlick confused Congressional report language with statutory language, included incomplete or misquoted report language, and failed to locate certain readily available reference materials. Dr. Knipmeyer had to rewrite ninety percent of the analytical portion of Schlick's report. Similar deficiencies in her performance were evident throughout 1987, including her work at CCOP.

The disabling impact of Schlick's condition is confirmed by evidence in her medical record. One doctor who examined her noted that although trained as a paralegal, she was unable to function as one when placed under even mild pressure. Two evaluations of her condition concluded that an appropriate position for Schlick would be significantly different from the one she held, requiring close supervision, few time constraints or deadlines, modest requirements for synthesizing new material, and assignment of minimal tasks at one time. Dr. Troshinsky, her treating psychiatrist, concluded that "she was given tasks that she could not successfully perform because of the cognitive deficits from the head injury."

Appellant essentially does not dispute the fact that her work assignments were appropriate for her position or the fact that her performance in 1987 was inadequate. Instead, Schlick primarily argues that the problems she experienced commenced only after Dr. Knipmeyer,

4

in April 1987, requested that Schlick observe regular hours instead of coming into work early, as she had done previously.

This does not explain her poor performance at CCOP, however, since that detail occurred before she was asked to observe regular working hours. More importantly, coming to work early would not address appellant's inability to perform under stress and meet deadlines or her need for intensive supervision. Undisputed evidence thus compels us to conclude that Schlick was simply unable to meet the legitimate requirements of her job.

B.

Schlick also claims that she was constructively discharged, alleging that Dr. Knipmeyer tried to get rid of her first by assigning her to work details elsewhere, and then by restructuring her work so that she was "bound to fail." This claim, however, is unsupported by the record.

In this circuit, the standard for constructive discharge requires a plaintiff to establish both intolerable working conditions and a deliberate effort by the employer to force the employee to quit. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995); Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993). In arguing that she was subjected to intolerable working conditions, Schlick points to (1) work assignments given to her in 1987; (2) criticism of her work in 1987; (3) Dr. Knipmeyer's request that she observe normal work hours; and (4) Dr. Knipmeyer's request for a medical evaluation of her condition. As noted, however, appellant does not contend that any of the work assigned was inappropriate for her position or that her performance in 1987 was adequate. By definition, asking an employee to perform legitimate assignments cannot be intolerable. Similarly, legitimate criticism is a part of any job. Meanwhile, the requests that Schlick observe regular working hours and provide a medical evaluation were part of a series of events wherein NCI attempted to assist her; Dr. Knipmeyer became aware that Schlick's disability severely affected her ability to perform and consequently requested a medical evaluation in order to aid Schlick in finding an appropriate position.

5

Nor do appropriate work assignments and legitimate criticism evidence "a deliberate effort by the employer to force the employee to quit." Johnson, 991 F.2d at 131. Schlick claims that Dr. Knipmeyer pressured her to go on the two work details, but, even if true, this could not have been part of a plot to get rid of her-- Dr. Knipmeyer was unaware of any significant problems with Schlick's performance until after she began the second detail. Similarly, Dr. Knipmeyer's requests that she work regular hours and obtain a medical evaluation were made before Dr. Knipmeyer knew the full extent of appellant's disability.

The record clearly shows NCI's overall behavior as a bona fide effort to assess the nature of Schlick's disability and to determine which positions or accommodations might be appropriate to allow her to continue working. In fact, NCI continued to search for a place for Schlick even after she had left work and it was not clear whether she would return.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

6